UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

AMEER SIDDIQUI,

        Plaintiff,                    Case No.: _____

v.

NETJETS AVIATION, INC.,

        Defendant.
_____/

## COMPLAINT FOR DAMAGES

### Preliminary Statement

1. Plaintiff Ameer Siddiqui (hereinafter "Siddiqui" or "Plaintiff") is a Muslim of South Asian, Pakistani descent. He became a pilot with NetJets Aviation, Inc. (hereinafter "NetJets" or "Defendant") in 2006. Siddiqui was subjected to religious, racial and ethnic harassment and discrimination.

2. Siddiqui brings this action pursuant to the Civil Rights Act of 1866, 42 U.S.C. § 1981, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et. seq., for discrimination based on race, religion, national origin, ethnic characteristics, and retaliation.

### JURISDICTION

3. Jurisdiction of this matter is conferred by 28 U.S.C. § 1331 and 1343(3) and 42 U.S.C. §2000e-5(f). Venue in this Court is proper under 42 U.S.C. § 2000e-5(f)(3) (2000) because Siddiqui was employed by NetJets through their location in Miami-Dade County, Florida, and a significant amount of the alleged acts herein occurred at the Miami International Airport in Miami-Dade County, Florida.

## PARTIES

4. Siddiqui is a resident of Miami, Miami-Dade County, Florida. He was an employee at NetJets originally reporting to NetJets's West Palm Beach office from 2006. In 2007, Siddiqui began flying with NetJets using Miami-Dade International Airport and other private air fields, located in Miami-Dade County, until he was suspended indefinitely on September 9, 2013. Throughout all relevant times Siddiqui was and is an adherent of the Muslim faith.

5. NetJets is a private employer with its principal place of business in Columbus, Ohio. NetJets has a satellite office in West Palm Beach, Florida, and Siddiqui and NetJets conducted business regularly from that West Palm Beach office and subsequently from Miami-Dade International Airport and other private air fields in Miami-Dade County. NetJets is a private employer within the meaning of Title VII as NetJets has continuously employed at least 15 employees during the current or proceeding calendar year.

## STATEMENT OF FACT

6. Siddiqui started working as a pilot for NetJets in 2006, flying private planes for individuals through the NetJets West Palm Beach Airport.

7. Siddiqui was never disciplined as a pilot, and had an exemplary flying record until September 7, 2013, when Siddiqui was called to NetJets's Ohio office to discuss "security concerns."

8. On September 8, 2013, Siddiqui discovered that his phone and badge deactivated without cause, and told he was not allowed on NetJets's property. The experience humiliated and embarrassed Siddiqui, who was never told of any reason why he would be barred from NetJets's property.

9. Siddiqui then called Chief Pilot David Hymen to inquire as to why he was locked out. Mr. Hymen told Siddiqui "it was something about political comments [Siddiqui] made, and it's above [Mr. Hymen's] paygrade."

10. After receiving little to no information from Mr. Hymen, Siddiqui contacted his union representative, Paul Kenrath, who stated that NetJets had "security concerns" about Siddiqui.

11. On September 9, 2013, NetJets placed Siddiqui on indefinite administrative leave, with no explanation as to what kind of "security concerns" placed Siddiqui on administrative leave.

12. By placing Siddiqui on leave without providing any information as to why he was placed on leave, NetJets violated their Collective Bargaining Agreement.

13. After NetJets grounded Siddiqui, NetJets called the FBI and reported Siddiqui as a possible terrorist sympathizer.

14. On December 5, 2013, Siddiqui was contacted by FBI Agent Tom Mead, who informed Siddiqui that NetJets contacted the FBI because of a "security concern."

15. Agent Mead also stated that the case was transferred to the FBI's Miami office, and that their inquiry would take place in Miami.

16. Agent Mead asked Siddiqui to meet with him and his partner, Agent Lily Gonzales, to answer a series of questions, specifically dealing with the fact that an employee had said Siddiqui was a terrorist sympathizer, and that he was previously the subject of an FBI investigation.

17. Siddiqui cooperated with the FBI, and answered all questions truthfully and honestly.

18. The FBI concluded that Siddiqui was not under investigation, and that his file would be closed. At this time, Siddiqui learned that Joseph Dalton, head of security for NetJets, reported Siddiqui to the FBI.

19. On December 6, 2013, the NetJets Association of Shared Aircraft Pilots Union ("NJASAP") filed a class action grievance, which included Siddiqui, in connection to this violation of the Collective Bargaining Agreement.

20. On February 24, 2014, Siddiqui received a letter from the FBI, stating that Siddiqui had no files of record in the FBI's database system.

21. Even after his name was cleared by the FBI, NetJets did not take Siddiqui off administrative leave.

22. Siddiqui waited patiently for NetJets to take him off administrative leave, and heard no response for almost an entire year.

23. On January 25, 2015, Siddiqui, through his legal counsel, filed a complaint of discrimination with Anthony Mosso, Labor and Employee Relations Manager for NetJets.

24. On February 16, 2015, Siddiqui, through his legal counsel, also filed a complaint of discrimination with unnamed General Counsel of NetJets.

25. NetJets did not respond to any of Siddiqui's complaints until March 29, 2015; on that date, Siddiqui was asked to travel again to Ohio for a meeting concerning his suspension on April 1, 2015.

26. On April 1, 2015, Siddiqui met with Mark Okey, VP of Contract Compliance, Erica Leighton, Labor and Employee Relations Manager, Dan Driscoll, Paralegal, Trent

Edwards, Assistant Chief Pilot, Mike Monkevicz, Union Steward, and Sonya Cook, Union Representative for Siddiqui, to discuss Siddiqui's administrative leave.

27. During this interview, Siddiqui for the first time was asked questions about comments allegedly made about Jewish individuals, September 11, 2001, the U.S. Military, and other political ideologies related to Siddiqui's South Asian, Pakistani and Muslim background.

28. During his interview, Siddiqui voiced his confusion as to why their questions pertained to his opinions on Jewish and Palestinian individuals when they had accused him of terrorist sympathies. Siddiqui believed that these questions were asked because of his race, religion, and national origin.

29. After going through the first set of questioning, Dan Driscoll repeated each question again; Siddiqui gave the same or similar answers to each question asked.

30. At no point in this line of questioning did any national security concerns arise, and at no point did NetJets convey to Siddiqui their security concerns.

31. On April 24, 2015, after his meeting with NetJets, Siddiqui filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

32. NetJets filed their position statement on September 22, 2015, providing that Siddiqui was placed on administrative leave because of "Anti-Semitic, Anti-American" statements allegedly made by Siddiqui. Employees accusing Siddiqui of these supposed statements were never named in NetJets's position statement.

33. Siddiqui, through his counsel, filed a rebuttal to the position statement on October 26, 2015, and attached the letter sent by the FBI stating that Siddiqui had no file in the FBI's system.

34. NetJets, throughout the EEOC investigation, stated the reason for reporting Siddiqui was unsubstantiated witness accounts of political debates concerning the state of affairs in the Middle East.

35. Not once during any point in the EEOC investigation did NetJets state that Siddiqui ever threatened to engage in any terrorist activity against the United States.

36. The EEOC Miami office transferred Siddiqui's discrimination case to the Cleveland Field Office, who subsequently dismissed the case and filed a Notice of Right to Sue, stating that "based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes."

37. Siddiqui received this Notice on May 16, 2016, and filed this action with 90 days of receipt of this Notice.

38. Because of NetJets's delay in resolving this issue, Siddiqui's type rating is no longer current, and he is no longer qualified to fly a commercial plane without extensive training.

39. When Siddiqui was placed on paid administrative leave, Siddiqui lost per diem, extended, and holiday pay. Siddiqui was also taken off of flight status due to "security concerns," which made it impossible for Siddiqui to find work with any major airline.

40. Upon information and belief, the average amount of additional hours for additional pay is significant; Siddiqui earned between $30,000 and $40,000 more per year before his indefinite suspension.

41. Throughout Siddiqui's paid administrative leave, he has actively looked for work in order to mitigate these damages. He recently took a job with another airline, which is supplementing, but not completely reimbursing, the difference in pay.

42. On August 12, 2016, this case was electronically filed timely through the Southern District of Florida's CM/ECF system. See Exhibit A.

43. According to the Clerk's office, the case was administratively closed due to issues with the filing of the complaint. Because of clerical issues outside the control of the Plaintiff and his attorneys, no email was on file for the attorneys of record on the case, so the notice was allegedly mailed to 8076 N. 56th St., Tampa, FL 33617.

44. The case was filed appropriately on August 12, 2016. Not only did the individual filing input an email address for attorney Omar Saleh multiple times, our office never received any mailing from the Southern District of Florida stating that the complaint was insufficient. See Exhibit B.

45. Our office received notice of the dismissal on September 9, 2016 through a personal inquiry initiated by the attorneys representing Plaintiff. For four days, the attorneys for Plaintiff tried to remedy the situation to no avail. Accordingly, Plaintiffs re-file this complaint on September 13, 2016 on recommendation of the Clerk of the Court for the Southern District of Florida with proper documentation attached.

## CLAIMS FOR RELIEF

### Count I. Discrimination in Violation of the Civil Rights Act of 1866

46. Paragraphs 1 - 41 are incorporated by reference as if fully set forth herein.

47. NetJets profiled and suspended Siddiqui because he is Muslim and of South Asian, Pakistani descent. Siddiqui was subjected to unlawful discrimination in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

48. Siddiqui suffered damages as a result of NetJets's unlawful conduct, including loss of flight experience, loss of qualifications for type rating, economic hardship, emotional pain and suffering, and humiliation.

49. In discriminating against Siddiqui, NetJets acted with malice and reckless disregard for Siddiqui's federally protected rights.

### Count II. Retaliation in Violation of the Civil Rights Act of 1866

50. Paragraphs 1 - 41 are incorporated by reference as if fully set forth herein.

51. In response to Siddiqui's complaints of discrimination, NetJets unreasonably extended Siddiqui's suspension with significantly lower pay, thus retaliating against Siddiqui for opposing the racial and religious discrimination against persons who are Muslim or of South Asian, Pakistani descent, in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

52. Siddiqui suffered damages as a result of NetJets's unlawful retaliation, including loss of flight experience, loss of qualifications for type rating, economic hardship, emotional pain and suffering, and humiliation.

53. In retaliating against Siddiqui, NetJets acted with malice and reckless disregard for Siddiqui's federally protected rights.

### Count III. Discrimination in Violation of Title VII of the Civil Rights Act of 1964

54. Paragraphs 1 - 41 are incorporated by reference as if fully set forth herein.

55. Siddiqui belonged to a protected class, as he is a Muslim of South Asian, Pakistani descent.

56. NetJets took adverse action against Siddiqui by profiling Siddiqui, suspending him, decreasing his pay, and unreasonably extending his suspension, which lead to his type rating becoming expired, because of his race, religion and national origin.

57. Upon information and belief, similarly situated non-Muslim, non-South Asian, and non-Pakistani employees were treated better than Siddiqui.

58. NetJets had no legitimate business reason for indefinitely suspending Siddiqui, nor for taking any other adverse actions against Siddiqui.

59. Any claims by NetJets stating that Siddiqui was suspended because of "anti-Semitic, anti-American" statements and/or previous FBI investigations are mere pretext for discrimination as it was made clear that Siddiqui was never the subject of any FBI Investigation.

60. Based on the foregoing, NetJets unlawfully discriminated against Siddiqui by suspending Siddiqui, decreasing his pay, and extending his suspension to the point of losing his type rating because of his race, religion, and national origin in violation of 42 U.S.C. § 2000e et. seq.

61. As a result of this unlawful discrimination, Siddiqui suffered damages as a result of NetJets's unlawful conduct, including loss of flight experience, loss of qualifications for type rating, economic hardship, emotional pain and suffering, and humiliation.

62. In discriminating against Siddiqui, NetJets acted with malice and reckless disregard for Siddiqui's federally protected rights.

63. Siddiqui satisfied all conditions precedent for bringing suit under Title VII.

64. On May 11, 2016, the EEOC mailed Siddiqui a notice of right to sue, which Siddiqui received on or about May 16, 2016.

### Count IV. Retaliation in Violation of Title VII of the Civil Rights Act of 1964

65. Paragraphs 1 - 41 are incorporated by reference as if fully set forth herein.

66. Based on the foregoing, NetJets retaliated against Siddiqui by unreasonably extending his suspension without reason because of his voiced opposition to discrimination against Muslims and persons of South Asian, Pakistani ancestry, in violation of 42 U.S.C. §2000e-3(a).

67. Siddiqui suffered damages as a result of NetJets's unlawful retaliation, including loss of flight experience, loss of qualifications for type rating, economic hardship, emotional pain and suffering, and humiliation.

68. In retaliating against Siddiqui, NetJets acted with malice and reckless disregard for Siddiqui's federally protected rights.

69. Siddiqui satisfied all conditions precedent for bringing suit under Title VII.

70. On May 11, 2016, the EEOC mailed Siddiqui a notice of right to sue, which Siddiqui received on or about May 16, 2016.

### PRAYER FOR RELIEF

WHEREFORE, Siddiqui prays that this Court enter an order:

(a) Enjoining NetJets from discriminating in the future on the basis of an employee's religion, ethnic characteristics or national origin, and from retaliating in the future against employees opposing such discrimination;

(b) Requiring NetJets to reinstate Siddiqui at the level which he would have attained absent discrimination;

(c) Awarding back pay and other economic damages to Siddiqui;

(d) Awarding compensatory damages to Siddiqui for emotional pain, suffering and humiliation caused by NetJets's acts of discrimination against Siddiqui;

(e) Awarding punitive damages caused by Netjets's acts of discrimination taken with malice and with reckless disregard for Siddiqui's federally protected rights;

(f) Awarding Siddiqui his reasonable attorney fees and costs of this action; and

(g) Awarding such other relief as this Court deems appropriate.

## Demand for Jury Trial

Plaintiff hereby demands a trial by jury on all issues so triable in this action.

Respectfully submitted,

/s/Katherine Heffner
Katherine Heffner
Florida Bar No. 112955
Email: kheffner@cair.com
/s/Omar Saleh
Omar Saleh
Florida Bar No. 91216
Email: osaleh@cair.com
CAIR Florida, Inc.
8076 North 56th Street
Tampa, FL 33617
Telephone: (813) 514-1414
Facsimile: (813) 987-2400

Dated September 13, 2016                    ATTORNEYS FOR PLAINTIFF

# EXHIBIT A



# Katherine Heffner

| | |
|---|---|
| **From:** | paygovadmin@mail.doc.twai.gov |
| **Sent:** | Friday, August 12, 2016 12:47 PM |
| **To:** | Katherine Heffner; Thania Clevenger |
| **Subject:** | Pay.gov Payment Confirmation: FLSD CM ECF |

Your payment has been submitted to Pay.gov and the details are below. If you have any questions or you wish to cancel this payment, please contact Financial Section at (305) 523-5050.

Application Name: FLSD CM ECF
Pay.gov Tracking ID: 25T9H3PD
Agency Tracking ID: 113C-8998510
Transaction Type: Sale
Transaction Date: Aug 12, 2016 12:47:25 PM

Account Holder Name: CAIR FLORIDA
Transaction Amount: $400.00
Card Type: MasterCard
Card Number: ************0905

THIS IS AN AUTOMATED MESSAGE.  PLEASE DO NOT REPLY.

1

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

AMEER SIDDIQUI,

        Plaintiff,                            Case No.: _____

v.

NETJETS AVIATION, INC.,

        Defendant.
_____/

## AFFIDAVIT IN SUPPORT OF COMPLAINT

I, Iasia Ward, do hereby swear and affirm the following:

1. On August 12, 2016, I filed Plaintiff's complaint under the supervision of attorneys Katherine Heffner and Omar Saleh.

2. During the filing, the system would not allow me to file the complaint without an email address. I input the email address of Omar Saleh to receive notifications of any case filings.

3. Because of clerical issues in the complaint, I attempted twice to file the complaint with no success.

4. On the third attempt to file, I was successful, and received a notification screen stating that the filing was accepted. See Exhibit A.

5. I also received notification that the payment for the original filing was accepted. See Exhibit B.

6. I am in charge of receiving mail sent to 8076 N. 56th St., Tampa, FL 33617.

7. Though the Clerk of Courts for the Southern District of Florida stated that they mailed notice of administrative errors on August 12, 2016, our office has not, nor has it ever, received notice by mail of the issues associated with the filing of the case.

8. Because we were not notified of filing issues, the case was administratively closed.

9. Our office became aware that the case was closed through personal inquiry initiated by our office on September 9, 2016.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

**FURTHER AFFIANT SAYETH NOT.**

9/13/16
DATE

_____
NAME

STATE OF FLORIDA
COUNTY OF Hillsborough

The foregoing instrument was acknowledged before me this ___13___ day of __Sept__, 20_16_, by __TASIA Ward__, who is _____ personally known to me, or __✓__ produced __FL Driver License__ as identification.

(SEAL)

_____
Notary Signature

RUTH COROMINAS
Notary Public, State of Florida
Commission# FF 130178
My comm. expires June 5, 2018

Ruth Corominas
Printed Name of Notary