UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

AMEER SIDDIQUI,

        Plaintiff,

v.                               Case No.:  1:16-cv-23924

NETJETS AVIATION, INC.,

        Defendant.
_____/

**DEFENDANT NETJETS AVIATION, INC.'S SUPPLEMENTAL BRIEFING REGARDING PENDING MOTIONS FOR SUMMARY JUDGMENT**

Defendant NetJets Aviation, Inc. ("NetJets"), pursuant to the Court's March 16, 2018 Order (Dkt. 80), submits this supplemental briefing related to the pending Motions for Summary Judgment.

### I.    Length and Effect of Leave Was Not an Adverse Employment Action

The length of Plaintiff Ameer Siddiqui's placement on paid administrative leave was not a "serious and material change" in his employment. *See Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001) (An adverse employment action for a claim of discrimination requires "a *serious and material* change in the terms, conditions, or privileges of employment.") (emphasis in the original); *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007) (for Title VII discrimination claims, adverse employment actions "include only ultimate employment decisions such as hiring, granting leave, discharging, promoting or compensating."). Although Siddiqui was on administrative leave for an extended period of time, that fact is not evidence of discrimination or of an adverse employment action.  Rather, by continuing Siddiqui's placement on paid administrative leave during the entire process, NetJets ensured that any financial impact to him would be minimized.  In total, NetJets paid Siddiqui approximately $250,000.00 –

including salary, raises, bonus and benefits – during the period he was on administrative leave. (Dkt. 45 at ¶ 47).[1]  Had NetJets terminated Siddiqui sooner, NetJets would have experienced a significant financial savings at Siddiqui's expense.

Siddiqui's claims that the length of his placement on administrative leave prevented him from maintaining his active flight status and negatively impacted his marketability as a pilot are not supported by the evidence.  In April 2016, thirty months after he had been placed on paid administrative leave, Siddiqui was hired as a full time pilot by Mesa Airlines.  (Dkt. 50 at ¶ 10).  The fact that Siddiqui's compensation was less than his salary with NetJets does not alter the fact that he was qualified to fly a commercial plane for Mesa Airlines while he was on administrative leave.  (Dkt. 45-1 at 210:17-20).

Moreover, as the Court observed during the pre-trial conference, any negative impact on Siddiqui's marketability as a pilot resulted from his initial placement on paid administrative leave, not from the length of the leave.  Siddiqui acknowledges that it was reasonable for NetJets to initially place him on paid administrative leave while the FBI investigated his actions. Accordingly, lack of marketability should not be considered in determining whether the length of the paid administrative leave constituted an adverse employment action.

## II.     The Relevant Period and Persons Regarding Adverse Actions Taken

Siddiqui's subsequent denials during his deposition and his arbitration testimony that he made the alleged statements are relevant because they are inconsistent with his explanation for his answers during the Crewmember Review Board ("CRB").  Siddiqui has attempted to justify his answers during the CRB by positing that his answers may have been different had he been given additional context.  For example, Siddiqui has explained that he expected to be asked

---

[1] In fact, Siddiqui benefitted economically from being placed on paid administrative leave because he was able to work additional hours at his other job with American Airlines while still receiving his full salary from NetJets.

questions about "security concerns" during the CRB and that he was surprised when he was only questioned about inappropriate comments. Under this theory, one would expect Siddiqui's answers to have changed over time – especially after he had time to reflect and to review the voluminous discovery produced in the case. That didn't happen. During both his deposition and his arbitration testimony, Siddiqui continued to adamantly deny making offensive and inappropriate comments. (Dkt. 45-1 at 157:6-164:3; 170:20-171:22; Dkt. 45-34 at 402:20-23; 404:6-22; 410:13-16; 414:9-23; 427:22-429:1; 431:18-432:21; 434:15-435:10; 437:3-9; 439:22-440:6; 442:4-23; 443:8-444:4).

Moreover, Siddiqui had sufficient information to honestly answer the key questions during the CRB without the aid of additional context or details. These questions included:

- Have you made remarks about Jewish people or the Jewish religion while on duty?

- Have you made remarks to co-workers about Jews being responsible for the 9/11 attacks, and other world problems?

- Did you state to co-workers that the "US military are the true terrorists?"

- Did you ever make comments to co-workers about a Jewish owner, who owns the World Trade Center, stating that this Owner and the US government masterminded bringing down the World Trade Center for purposes of implicating Pakistan?

(Dkt. 45-18 at 1-4). Siddiqui twice answered no to each of these questions during the CRB – directly contradicting the reports of numerous pilots. (*Id*.; Dkt. 52 at 8). It is not reasonable to conclude that each of the pilots who reported hearing Siddiqui make these offensive comments simply misunderstood innocuous political discussions or efforts to educate others about Pakistan. Put bluntly, there is a vast difference between discussing politics and alleging that "the Jews" and the U.S. government were responsible for the September 11th attacks. (Compare Dkt. 45-1 at 163:12-14 to Dkt. 45 at ¶¶ 3-18). NetJets clearly had a good faith belief that Siddiqui had lied

3

during the CRB.  *See EEOC v. Total System Services, Inc.*, 221 F.3d 1171, 1176-77 (11th Cir. 2000).

### III.     Additional Clarifying Citations to the Existing Record for the Court's Reference

A.  Timeline of Communications to Mr. Siddiqui

March 2, 2015:

The email from Jennifer Beale stated that "NetJets does not discuss employees with outside third parties" and that the "pilots are represented by a union and covered by a collective bargaining agreement, and any concerns they have about the Company's compliance with the CBA can be addressed through that forum." (Dkt. 42-2 at 103).

March 29, 2015:

The email scheduling the Crewmember Review Board advised Siddiqui that:

> The topic of discussion will be inappropriate statements relating to owners and/or violations of the Professional Conduct and Prohibition Against Harassment Policy, including, but not limited to, derogatory statements regarding different religions (anti-Semitic comments) and national origins.

(Dkt. 42-2 at 105).

April 1, 2015 (date of CRB):

At the beginning of the CRB, Siddiqui was advised:

> You were placed on administrative leave after an anonymous call was made to the Company's aviation security department.  The caller raised concerns about remarks you are said to have made on duty that could be offensive to people of certain religious groups or national origin.  In the process of investigating this complaint, several other pilots have raised similar concerns about remarks you have made while on duty or in uniform.

(Dkt. 45-18 at 1).  The questions asked during the CRB clearly indicated that the members were interested in comments Siddiqui made to co-workers. (*Id*. at 1-6).

Prior to a fifteen to twenty minute break during the CRB, Siddiqui was told:

> These questions do not arise out of this interview board making allegations against you.  We are not just making this up – we received the initial crewmember input, and then did ask several crewmembers about flying with you, as we do not just take the word of one person as the absolute truth.  And, we are only concerned with your on duty behavior – I think we made that clear earlier, but just wanted to confirm that with you now.

(Dkt. 45-18 at 4).  Following the break, the CRB members repeated the same questions to Siddiqui, who once again categorically denied ever having made the statements. (*Id*. at pp. 6-7).

C.  <u>Composition of CRB Panel</u>

Siddiqui's union attorney Sonya Cook, and union representative Mike Monkevicz, also were present during the CRB.  (Dkt. 45-18 at 1).

D.  <u>Selection of Pilots to Interview for Investigation</u>

The pilots who were interviewed during the investigation were selected because they had recently flown with Siddiqui.  (Dkt. 45-4 at 25:18-26:5; 45-6 at 19:1-5; 29:19-30:6).

E.  <u>Brad Donwerth is Not A Valid Comparator</u>

Bill Noe had no involvement in Brad Donwerth's internal investigation in 2007.  At that time, Donwerth was a Captain in NetJets Aviation, Inc.'s Citation Ultra/Encore fleet. (Dkt. 42-2 at 200, 202-03).  NetJets Aviation, Inc. is located in Columbus, Ohio. (Dkt. 16 at ¶ 5).  Between 1993 and 2009, Noe was employed by NetJets International, Inc. in South Carolina.  (Dkt. 76-1 at ¶ 5; Dkt. 45-10 at 9:5-20; 10:10-14:11).  Contrary to Siddiqui's assertion, Noe did not become the President and COO of NetJets North America in Columbus, Ohio until 2009. (Dkt. 76-1 at ¶ 5; Dkt. 45-10 at 14:8-15:4). In fact, Noe spent all of 1997 flying new Gulfstream aircraft for NetJets International, Inc.  (Dkt. 45-10 at 12:4-19).

Siddiqui's Supplemental Briefing (Dkt. 81) failed to provide any support for the proposition that disciplinary measures taken by the same title or position within an organization, but not the same individual, can be used to establish similarly situated comparators under the *McDonnell Douglas* analysis.  Rather, "differences in treatment by different supervisors or decision makers can seldom be the basis for a viable claim of discrimination." *Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1261 n.5 (11th Cir. 2001); s*ee also Mack v. ST Mobile Aerospace Eng'g, Inc.,* 195 Fed. Appx. 829, 845 (11th Cir. 2006) (finding comparators not similarly situated because they were working under the supervision of a different program manager); *Jones v. Gerwens*, 874 F.2d 1534, 1541 (11th Cir. 1989) ("disciplinary measures undertaken by different supervisors may not be comparable for purposes of Title VII analysis.").[2] Accordingly, Brad Donwerth was not similarly situated to Siddiqui.

March 21, 2018                               Respectfully submitted,

                                              **ZUCKERMAN SPAEDER LLP**

                               By:    /s/Nathan M. Berman
                                      Nathan M. Berman
                                      Fla. Bar No. 0329230
                                      Mamie V. Wise
                                      Fla. Bar No. 65570
                                      ZUCKERMAN SPAEDER LLP
                                      101 East Kennedy Boulevard, Suite 1200
                                      Tampa, Florida 33602
                                      Tel: 813.221.1010
                                      Fax: 813.223.7961
                                      nberman@zuckerman.com
                                      mwise@zuckerman.com

                                      *Attorneys for NetJets Aviation, Inc.*

---

[2] Dave Hyman's involvement is irrelevant because he was not a decision maker in either the Donwerth or Siddiqui matters.

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 21, 2018, I electronically filed the foregoing with the Clerk of the Court using the Court's CM/ECF system.

*/s/Nathan M. Berman*
Nathan M. Berman

6352568.1